No. 97-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 62

FORREST M. SANDERS,

Petitioner,

v.

STATE OF MONTANA,

Respondent.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Petitioner:

Brad L. Arndorfer; Arndorfer Law Firm, P.C.;
Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Brenda Nordlund, Assistant Attorney General;
Helena, Montana

Craig Hensel, Billings City Attorney's Office,
Billings, Montana

Submitted on Briefs: February 26, 1998

Decided: March 24, 1998

Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1    Forrest Sanders appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to hold the State of Montana in contempt of court for its failure to reinstate his driver's license.  For the reasons stated below, we affirm.


¶2    The sole issue on appeal is whether the District Court erred in denying Sanders' motion to hold the State of Montana's Department of Justice in contempt for its refusal to reinstate Sanders' driver's license after a six-month suspension and its decision to instead revoke his license for a period of one year.

FACTUAL AND PROCEDURAL BACKGROUND

¶3    On November 6, 1995, Sanders filed an action in District Court, seeking the reinstatement of his driver's license which had been suspended by the Montana Department of Justice following his arrest for driving under the influence of alcohol and refusal to submit to a breath test.  Sanders asked the District Court to review the suspension, arguing the officer who stopped him lacked probable cause to pull him over.  On May 8, 1996, the District Court issued its findings of fact and conclusion of law, upholding the suspension of Sanders' driving privileges for a ninety-day period.  On May 10, 1996, the State filed a motion to amend the court's order, conceding it had erroneously stated to the court that Sanders' license had been suspended for a period of ninety days, when in fact the State had suspended his driving privileges for a period of six months.  On May 15, 1996, the District Court amended its findings of fact and conclusions of law to uphold the suspension of Sanders' license for a period of six months.

¶4    Sanders appealed, and we affirmed the District Court's decision in a nonciteable opinion dated January 14, 1997.  In so doing, we first concluded the District Court did not err in finding the officer had reasonable grounds to believe Sanders was driving under the influence of alcohol.  We also concluded the court had properly amended its findings of fact and conclusions of law to correct an error in the procedural history of the case and affirm the suspension of Sanders' license for a period of six months.


¶5    On July 8, 1997, Sanders' counsel wrote a letter to the Attorney General's

office,
seeking reinstatement of Sanders' driver's license.  Sanders' counsel argued that "both the
District Court and the Supreme Court ruled that this was a six (6) months suspension," but
recognized "[t]he Driver Improvement Bureau has put this down as a second refusal and a
one year revocation."   The Department of Justice refused to reinstate Sanders' license on the
grounds that a one-year revocation was statutorily required under the circumstances of this
case.

¶6   On July 24, 1997, in light of the Department of Justice's refusal to reinstate his
license, Sanders filed a motion for contempt.  Sanders argued that both this Court and the
District Court had upheld the suspension of his license for a period of six months, and that
respondents were in contempt of court for refusing  to reinstate Sanders' license after the
expiration of the six-month period.

¶7   In a September 18, 1997, order and memorandum, the District Court denied Sanders'
motion for contempt, reasoning that the six-month suspension period had not become the law
of the case, and concluding that a one-year revocation period was indeed statutorily
mandated.  On September 22, 1997, Sanders filed his notice of appeal from the District
Court's order denying his motion for contempt.

¶8   Moreover, Sanders filed a petition for writ of supervisory control on October 1, 1997,
and an amended petition on October 31, 1997.  Sanders represented that the District Court
had  refused to stay its order denying Sanders' motion for contempt, pending appeal.  Sanders
argued that, unless this Court issued a writ of supervisory control, the one-year revocation
period he complained of would expire before his appeal could be heard, thereby rendering
his appeal moot. Thus, on November 18, 1997, we granted Sanders' petition for supervisory
control, and ordered any further suspension of Sanders' driver's license stayed pending the
present decision.

STANDARD OF REVIEW

¶9   We review contempt proceedings only to determine whether the District Court acted

within its jurisdiction and whether the evidence supports the court's order. Gillespie v.
Sherlock (1996), 279 Mont. 21, 24, 929 P.2d 199, 200 (citing State ex rel., Foss v. District
Court (1985), 216 Mont. 327, 331, 701 P.2d 342, 345).

## DISCUSSION

¶10  Did the District Court err in denying Sanders' motion to hold the Department of Justice in contempt for its refusal to reinstate Sanders' driver's license after a six-month suspension?

¶11  On appeal, Sanders argues this Court should not permit the State to disobey what Sanders characterizes as a direct ruling by the District Court, affirmed on appeal, that his driver's license be suspended for a period of six months.  Sanders argues the six-month suspension became the law of the case, and asserts the District Court was thus without authority to approve the State's decision to revoke Sanders' license for a period of one year. Sanders also argues the District Court was collaterally estopped from doing anything other than granting his motion for contempt in light of the State's refusal to reinstate his license after six months.

¶12  The law of the case doctrine relied upon by Sanders stands for the proposition that "the final judgment of the highest court is the final determination of the parties' rights."  Scott v. Scott (1997), 283 Mont. 169, 175, 939 P.2d 998, 1002 (quoting Fiscus v. Beartooth Electric Cooperative, Inc. (1979), 180 Mont. 434, 436, 591 P.2d 196, 197).  We have explained that when "the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal."  Scott, 283 Mont. at 175-76, 939 P.2d at 1002 (quoting Fiscus, 180 Mont. at 437, 591 P.2d at 197).

¶13  As noted above, on May 8, 1996, the District Court issued an order upholding the suspension of Sanders' driving privileges for a period of ninety days.  Two days later, however, the State filed a motion to amend the court's order on the grounds that Sanders' driver's license had in fact been suspended for a period of six months, rather than ninety days.  Thus, on May 15, 1996, the court amended its findings of fact and conclusions

of law
to reflect that Sanders' "driving privileges were suspended October 30, 1995, for six (6)
months by the State of Montana, Department of Justice, Motor Vehicle Division." Although
the court noted the Department of Justice had suspended Sanders' license for six months, that
observation was but incidental to the court's ultimate conclusion that the officer who stopped
Sanders had reasonable grounds to believe he was operating his vehicle while under the
influence of alcohol.

¶14  We affirmed the District Court's decision on appeal, concluding in pertinent part that
the court had properly amended its findings of fact and conclusions of law to correct an error
in the procedural history of the case and uphold the State's suspension of Sanders' license for
a period of six months, rather than ninety days.

¶15  Relying on the foregoing decisions, Sanders argues this Court, as well as the District
Court, has directly ordered that Sanders' license be suspended for a period of six months.
Sanders argues our pronouncement became the law of the case, and asserts the District Court
failed to adhere to our decision when it denied Sanders' motion to hold the State in contempt
for its refusal to reinstate his driver's license after a six-month suspension.

¶16  As noted, the law of the case doctrine applies only to those principles or rules of law
enunciated by this Court which are "necessary to the decision" before it.  Haines Pipeline
Construction, Inc. v. Montana Power Co. (1994), 265 Mont. 282, 289, 876 P.2d 632, 637
(citing Zavarelli v. Might (1989), 239 Mont. 120, 124, 779 P.2d 489, 492); Phalen v. Rilley
(1970), 156 Mont. 91, 93, 475 P.2d 998, 999.  Moreover, we have recognized that "[t]he
doctrine does not extend so far as to include matter which was consequential, incidental, or
not decided by the court."  Phalen, 156 Mont. at 93, 475 P.2d at 999 (quoting O'Brien v.
Great Northern Ry. Co. (1966), 148 Mont. 429, 439-40, 421 P.2d 710, 715).

¶17  Review of the record indicates that the only substantive question addressed by the
District Court in its amended findings of fact and conclusions of law was whether the officer

who stopped Sanders had reasonable grounds to believe he was operating his vehicle while under the influence of alcohol.  Moreover, although we held the District Court had not erred in amending its decision to uphold the suspension of Sanders' license for six months, the issue on appeal was whether the court erred in concluding the officer had reasonable grounds to believe Sanders was driving while under the influence of alcohol.

¶18  In fact, clearly not at issue before the District Court, or on appeal, was the applicable license suspension or revocation period pursuant to   61-8-402, MCA.  Thus, neither this Court nor the District Court has had occasion to determine whether   61-8-402, MCA, mandated that the Department of Justice suspend Sanders' license for a period of ninety days, six months, or one year.  As mention of the six-month suspension term was not necessary to our conclusion that the officer had reasonable grounds to stop Sanders, it did not become the law of the case.

¶19  Instead, as we recognized in our January 14, 1997, decision, "[t]he Montana Department of Justice is responsible for determining the applicable driver's license suspension period in accordance with   61-8-402, MCA."  Section 61-8-402(6), MCA, provides as follows:

The following suspension and revocation periods are applicable upon refusal to submit to one or more tests:
. . . .
(b)  upon a second or subsequent refusal within 5 years of a previous refusal, as determined from the records of the department, a revocation of 1 year with no provision for a restricted probationary license.

¶20  The record indicates that the suspension of Sanders' license on October 30, 1995, resulted from his second testing refusal within a five-year period.  Accordingly, as determined by the Department of Justice and as reflected by Sanders' certified driving record, § 61-8-402(6), MCA, mandated that Sanders' driving privileges be revoked for a period of one year.  Moreover, the record indicates that Sanders had notice that his refusal to take a breath test for the second time within a five-year period would result in the revocation of his driving privileges for a period of one year.  On January 19, 1996, the parties stipulated that Officer Longin had read an Implied Consent Advisory form to Sanders on the night of his arrest.  The form explained the following:   "If you have refused similar testing within the past five years and you refuse again today, your driver's license will be seized and

revoked
for one year."

¶21   The record thus indicates Sanders had notice that, in light of his prior driving record, the Department of Justice would revoke his license for a period of one year.

¶22   That the District Court and this Court previously referenced a six-month suspension does not mean the court was then bound, pursuant to the law of the case doctrine, to adhere to a six-month suspension period.  Rather, we conclude that the law of the case doctrine is inapplicable under the circumstances, and that the District Court did not err in denying Sanders' motion to hold the State in contempt for its refusal to reinstate his driving privileges following a six-month suspension.

¶23   Sanders also argues the District Court was collaterally estopped from doing anything but granting his motion for contempt.  As with the law of the case doctrine, however, the collateral estoppel bar only prevents relitigation of those issues actually decided in a prior adjudication.  Haines Pipeline, 265 Mont. at 288, 876 P.2d at 636.  As neither the District Court nor this Court had previously addressed the question of whether a six-month suspension was in fact appropriate under the circumstances of this case, we conclude the District Court was not collaterally estopped from denying Sanders' motion for contempt.

¶24   We have held that a party may not be held in contempt of court for violating an order, unless the terms of the order are definite, certain, and specific.  Goodover v. Lindey's, Inc. (1993), 257 Mont. 38, 42, 847 P.2d 699, 701.  Furthermore, we have recognized that "[i]f there is no command, there is no disobedience."  Goodover, 257 Mont. at 42, 847 P.2d at 701.  Here, although both the District Court and this Court made mention of a six-month suspension period, neither court evaluated the statutory propriety of that term or specifically ordered its imposition.  Based on the foregoing, we affirm the District Court's decision denying Sanders' motion for contempt.

/S/  JIM REGNIER

We Concur:

/S/   J. A.   TURNAGE
/S/   JAMES C. NELSON
/S/   WILLIAM E. HUNT, SR.
/S/   W. WILLIAM LEAPHART